IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | Cr. No. 7:11-171-HMH |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Jeffrey Grant Prysock, | ) | |
| | ) | |
| Movant. | ) | |

This matter is before the court on Jeffrey Grant Prysock's ("Prysock") motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. For the reasons set forth below, the court summarily dismisses the motion.

I. FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2011, Prysock pled guilty to one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); and one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). He was sentenced on December 19, 2011, to 110 months' imprisonment. Prysock appealed his conviction and sentence, and the Fourth Circuit affirmed. United States v. Prysock, No. 12-4007, 2012 WL 2354645, at *2 (4th Cir. June 21, 2012) (unpublished). On October 15, 2012, Prysock filed the instant § 2255 motion.[1]

In his § 2255 motion, Prysock alleges that his counsel rendered ineffective assistance by (1) failing to investigate an alibi witness and providing misinformation before advising him to plead guilty; (2) failing to object at sentencing to an enhancement under the United States

---

[1] See Houston v. Lack, 487 U.S. 266 (1988).

1

Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(6); and (3) failing to object at sentencing to the base offense level on the basis that it should have been 20 under U.S.S.G. § 2K2.1(a)(4), as opposed to 24 under U.S.S.G. § 2K2.1(a)(2), because Prysock's prior conviction for "assessory [sic] to robbery" does not qualify as a crime of violence. (Prysock Mem. Supp. § 2255 Mot., generally.) For the reasons set forth below, the court summarily dismisses Prysock's § 2255 motion.

## II. Discussion of the Law

To successfully challenge a conviction or sentence on the basis of ineffective assistance of counsel, Prysock must demonstrate that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced by his counsel's deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. With respect to the second prong, one must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Because Prysock tendered a guilty plea, he must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### A. Investigation of Alibi Witness

The court construes Prysock's claim that his counsel was ineffective for failing to investigate an alibi witness and for providing misinformation regarding the alibi witness in advising him to plead guilty as arguing that counsel was ineffective for advising Prysock to plead guilty. A defendant can challenge the voluntary and intelligent character of the guilty plea

2

by demonstrating that the advice he received from counsel "was not within the range of competence demanded of attorneys in criminal cases." Tollett v. Henderson, 411 U.S. 258, 266 (1973) (internal quotation marks omitted). "[C]ounsel may . . . advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances." United States v. Cronic, 466 U.S. 648, 656 n.19 (1984).

Prysock alleges that he informed his counsel that he did not use or possess the firearm that was found in the residence on September 9, 2010, when he was arrested, and requested that his counsel interview Shawn Miller ("Miller"), who also lived at the residence with Prysock. (Prysock Mem. Supp. § 2255 Mot. 3, ECF No. 69-1.) According to Prysock, his counsel interviewed Miller and informed Prysock that Miller "did not provide him with any information that was favorable." (Id.) In addition, counsel allegedly informed Prysock that Miller was being debriefed by the Government and was a potential adverse witness. (Id.) Prysock argues that counsel advised him that "based on his investigation and assessment of these facts, . . . it would be in Prysock's best interest to plead guilty in order to keep Shawn Miller from testifying against him at trial." (Id.) However, Prysock submits that

> [u]pon arriving at F.C.I. Williamsburg, Prysock received a sworn affidavit from Shawn Miller. The testimony in Miller's affidavit reveals that Prysock did not have any knowledge of the firearm that was obtained during his arrest on September 9, 2010. Miller's affidavit reveals that he . . . and not Prysock was responsible for the firearm that was located in the residence on 122 Terrace Road. Finally, Miller's affidavit reveals that he was willing to testify on Prysock's behalf, but that he was never contacted by anyone acting in Prysock's interest to determine whether he had any information that was favorable or potentially exculpatory to Prysock.

(Id. at 4 & Ex. B (Miller Aff., generally, ECF No. 69-3.)

3

By pleading guilty, Prysock received the benefit of acceptance of responsibility. During the Rule 11 colloquy, Prysock provided sworn testimony regarding his guilty plea. When asked whether he was satisfied with the representation of his attorney, Prysock answered, "Yes, sir." (Guilty Plea Tr. 6, ECF No. 59.) When asked if he had any complaints of his attorney or anyone in connection with the case, Prysock responded, "No, sir." (Id.) During his guilty plea hearing, Prysock stated that no one forced, threatened, or coerced him to plead guilty. (Id. at 12) Prysock was advised of the charges, the potential penalties, the elements of the offenses, and the rights that he was waiving by pleading guilty. (Id. at 4-8.) Specifically, Prysock was informed by the court:

> THE COURT: In count three you're charged as follows: That on or about September the 10th, 2010, in the district of South Carolina, that you having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess a firearm and ammunition which had been shipped in interstate commerce. Do you understand that?
>
> THE DEFENDANT PRYSOCK: Yes, sir.
>
> THE COURT: The elements are that you had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, that you knowingly possessed firearm -- a firearm and ammunition, that the possession affected interstate commerce. Do you understand those elements?
>
> THE DEFENDANT PRYSOCK: Yes, sir.
>
>  * * *
>
> THE COURT: As to each of these counts, understanding what you're charged with, what the elements are and what the statutory sentencing provisions could be, do you still wish to plead guilty?
>
> THE DEFENDANT PRYSOCK: Yes, sir.

(Id. at 7-8.) In addition, the Government summarized the facts as follows:

>Your Honor, on the date alleged in count two of the indictment officers of the Spartanburg County Sheriff's Office executed a search warrant at Mr. Prysock's residence. During the search the officers found a firearm and ammunition described in count three of the indictment as well as about -- as about 260 grams of marijuana, scales, plastic baggies and other items consistent with drug distribution. Earlier that day the officers had made a controlled buy from Mr. Prysock of marijuana.
>
>> The firearm and ammunition described in count three of the indictment were manufactured -- the firearm was manufactured in Czechoslovakia and imported by a company out of Vermont. The ammunition -- or most of the ammunition was manufactured in Lewiston, Idaho. Mr. Prysock has been convicted of an offense for which he could have received more than a year and he's not received a pardon for the offense.

(Guilty Plea Tr. 14-15, ECF No. 59.) Prysock agreed with the Government's summary of the facts regarding the firearm. (Id. at 15.) Further, Prysock admitted his guilt multiple times. (Id. at 12, 15-16.) The truth of Prysock's prior sworn statements is conclusively established. United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Because Prysock's ineffective assistance of counsel claim relies upon allegations that directly contradict his prior sworn statements to the court, summary dismissal of this claim is appropriate. Id. at 222 ("[A] district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Further, during his sentencing hearing, Prysock's counsel informed the court that Miller was interviewed. The following exchange occurred during the sentencing hearing:

> MR. STEPP: . . . . [I]n my preparation on the case before the plea was entered we found this fellow that Mr. Prysock had directed us to and interviewed him. And the gun, and I believe this is undisputed, the gun, there was about a ten or 12-day lapse between when Spartanburg County made a controlled drug buy at this residence and when they executed the search warrant. And it was during that ten or 12-day period that this person purchased the weapon. We have -- we had an ATF form which I provided to the U.S. Attorney and the probation agent that this guy had purchased the weapon at some pawn shop or something where they had to go through the process.

    THE COURT: A third party purchased it.

    MR. STEPP: Right. And that's the man we found, we interviewed, and it was our position that the gun came into his possession and ultimately into the house after the drug sale that led to the search warrant, shortly before they came in on the search warrant. And that the information that we had from this person, which we gave, again, to the U.S. Attorney and the probation agent, that this guy brought it into the house. And he had told my investigator that he brought the gun into the house, that he didn't show it to Prysock, as far as he knew he was, you know, unaware he had brought the gun into the house.
    Now, Mr. Prysock's position was he did become aware of the weapon being in the house shortly before the police arrived to search the house and he did tell them there was a gun in the house or whatever, and that's what he was talking about. And that was the basis for the plea for knowingly possessing a firearm. But that the -- that would have been our defense if the case on the 924(c) had proceeded on to trial.

(Sentencing Tr. 12-13, ECF No. 61.) It is apparent from the record in this case that counsel interviewed Miller. Further, Prysock knew the firearm was in the house when the search warrant was executed because, as Prysock represented to the court at sentencing, he informed the officer about the presence of the firearm. (Id. at 28.) Notably, "§ 922(g)(1) does not require proof of actual or exclusive possession; constructive or joint possession is sufficient. The Government may prove constructive possession by demonstrating that the defendant exercised, or had the power to exercise, dominion and control over the item." United States v. Gallimore, 247 F.3d 134, 137 (4th Cir. 2001) (internal quotation marks and citations omitted). As set forth in the Presentence Investigation Report ("PSR"), the firearm was found behind a throw cushion on the couch where Prysock was sleeping with his son. (PSR ¶¶ 8-9.) Based on the foregoing, Prysock's claim that counsel was ineffective in advising him to plead guilty is wholly without merit because the only competent evidence before this court is that counsel's investigator thoroughly interviewed Miller and that Prysock was aware of the firearm in the residence. Thus, counsel was not objectively unreasonable in advising Prysock to plead guilty as his advice was

6

not based on a failure to investigate Miller and there is no evidence that counsel provided any misinformation to Prysock. Further, Prysock has failed to show any prejudice.

### B. Enhancement under U.S.S.G. § 2K2.1

Prysock argues that counsel was ineffective for failing "to object prior to sentencing and at sentencing to the district court's application of a four point enhancement to Prysock's sentence pursuant to U.S.S.G. § 2K2.1(b)(6)." (Prysock Mem. Supp. § 2255 Mot. 6, ECF No. 69-1.) On direct appeal, Prysock challenged the district court's application of the four-point enhancement under § 2K2.1(b)(6). Section 2K2.1(b)(6)(B) provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The Fourth Circuit found that the court did not err in applying the enhancement finding as follows:

> Here, a firearm was found on the same sofa as the marijuana. In addition, ammunition for two different types of firearms was also found in the apartment. Prysock admitted to possession of the firearm and ammunition and possession with intent to distribute the marijuana. In addition, the record supported the conclusion that guns had been recently discharged into Prysock's apartment in an apparent robbery attempt. In light of the physical proximity between the firearm and the drugs and the recent violence at the apartment, the district court did not clearly err in applying the four-level enhancement under USSG § 2K2.1(b)(6).

Prysock, 2012 WL 2354645, at *2. Moreover, counsel lodged a written objection to application of § 2K2.1(b)(6). (PSR Objection No. 4.) Further, at sentencing counsel vigorously argued his objection to the enhancement and the court denied the objection. (Sentencing Tr. 11-23, ECF No. 61.) Prysock concedes that counsel raised an objection, but contends that counsel did not argue the objection properly due to a "misapprehension of the relevant law," and that the court committed error as a result in applying the enhancement. (Prysock Mem. Supp. § 2255 Mot. 7,

ECF No. 69-1.) Prysock's argument is wholly without merit as counsel did object prior to and at sentencing to application of the enhancement under § 2K1.1(b)(6). Further, the Fourth Circuit affirmed the district court's application of the enhancement, finding no clear error. Therefore, counsel's performance was not objectively unreasonable, and Prysock cannot show any prejudice.

### C. Base Offense Calculation

Lastly, Prysock alleges that his counsel was constitutionally ineffective for failing to object to the base offense level of 24 in the Presentence Investigation Report ("PSR"). (Prysock Mem. Supp. § 2255 Mot. 9-10, ECF No. 69-1.) U.S.S.G. § 2K2.1(a)(2) provides that for a violation of 18 U.S.C. § 922(g) where the defendant "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense," the base offense level is 24. The PSR notes that the base offense level of 24 is based on Prysock's prior convictions for attempted common law robbery and common law robbery as set forth in paragraphs 23 and 24. (PSR ¶¶ 23, 24, 58.) Prysock contends his base offense level should have been 20 because his prior offenses for common law robbery and accessory to robbery "occurred on the same occasion and that he was convicted and sentenced at the same time for these offenses." (Prysock Mem. Supp. § 2255 Mot. 9, ECF No. 69-1.) Further, Prysock submits "that his assessory [sic] charge should not be considered as a 'crime of violence' because he was only sitting in the vehicle during the commission of this offense." (Id.) Prysock alleges that he informed his counsel of this information and that his counsel was constitutionally ineffective in failing to raise any objection to the base offense level. (Id.)

As an initial matter, there is no evidence to support the argument that the common law robbery conviction and the accessory after the fact to robbery conviction occurred on the same occasion such that they should be counted as one offense under U.S.S.G. § 4A1.2. The accessory after the fact to common law robbery offense occurred on September 29, 1997. Prysock was arrested on September 29, 1997, and was sentenced on December 17, 1997. (PSR ¶ 23.) The common law robbery offense occurred on September 25, 1997. Prysock was arrested on January 9, 1998, and was sentenced on May 4, 1999. (Id. ¶ 24.) Thus, these two offenses count separately as they were separated by intervening arrests, the charges were brought in separate charging documents, and Prysock was sentenced on different days. See U.S.S.G. § 4A1.2(a)(2) ("Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence."). Thus, this argument fails on the merits.

In addition, the accessory after the fact to robbery conviction was not counted as a crime of violence as it does not qualify as such. Instead, the attempted common law robbery conviction and the common law robbery conviction were counted. (PSR ¶¶ 23, 24, 58.) The attempted common law robbery offense occurred on September 28, 1997. Prysock was arrested for the offense on September 29, 1997, and sentenced on December 17, 1997. (Id. ¶ 23.) Thus, this offense counts separately from the common law robbery conviction as they were separated by intervening arrests, the charges were brought in separate charging documents, and Prysock

9

was sentenced on different days. Further, in reviewing the PSR, it is clear that the attempted common law robbery conviction qualifies as a crime of violence. U.S.S.G. § 4B1.2(a) provides that

> [t]he term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
>
> Further, the comment section provides that
>
> "[c]rime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 cmt. 1. On the attempted common law robbery conviction, Prysock pled guilty to the indictment, which charged that Prysock "attempt[ed] to take from the person or presence of Mary Skipper, by means of force or intimidation, goods or monies of Dollar General Store . . . ." (PSR ¶ 23.) Thus, this conviction qualifies as a crime of violence.

However, even if the attempted common law robbery conviction did not qualify, Prysock's October 26, 2010 conviction for possession with intent to distribute marijuana qualifies as a controlled substance offense under U.S.S.G. § 2K2.1(a)(2). (Id. ¶ 29.) Under U.S.S.G. § 4B1.2(b),

> [t]he term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the

manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

Thus, even omitting the attempted common law robbery conviction, Prysock has two prior convictions for either a crime of violence or a controlled substance offense to establish a base offense level of 24 under § 2K2.1(a)(2). Based on the foregoing, there was no basis for counsel to lodge an objection to the base offense level calculation. Thus, counsel was not objectively unreasonable in failing to object and Prysock can show no prejudice.

It is therefore

**ORDERED** that Prysock's motion to vacate, set aside, or correct his sentence under § 2255, docket number 69, is summarily dismissed. It is further

**ORDERED** that a certificate of appealability is denied because Prysock has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

                                               s/Henry M. Herlong, Jr.
                                               Senior United States District Judge

Greenville, South Carolina
October 30, 2012

### NOTICE OF RIGHT TO APPEAL

The Movant is hereby notified that he has the right to appeal this order within sixty (60) days from the date hereof pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.